NOT DESIGNATED FOR PUBLICATION

No. 114,978

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

EDDIE O. LUELLEN, III,
*Appellant.*

MEMORANDUM OPINION

Appeal from Lyon District Court; JEFFRY J. LARSON, judge. Opinion filed December 9, 2016. Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Carissa E. Brinker*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., GREEN and LEBEN, JJ.

LEBEN, J.: Before he was sentenced, Eddie O. Luellen III sought to withdraw his no-contest plea to a charge of possession of a hallucinogenic drug. Luellen claimed that he had good cause to withdraw the plea because he made it under duress—he said he had been desperate to get out of the county jail because he feared for his safety after a jail guard had kicked him while he was on the floor of his cell.

But after hearing testimony from Luellen, his attorney, and two jail employees, the district court concluded that Luellen had not "come anywhere close to making a showing

that there's good cause to withdraw [the] plea." The district court clearly did not believe Luellen's testimony, and there's ample evidence to support the no-good-cause finding. We therefore affirm the district court's judgment.

With that overview, let's review what happened in a bit more detail. Luellen was charged in May 2014 with possession of a hallucinogenic drug and driving a motor vehicle without a valid license. Attorney Elizabeth Oliver was appointed to represent him.

By March 2015, Oliver took the State's offer of a plea agreement to Luellen. Under it, the State agreed to drop the charge of driving without a valid license in exchange for Oliver's plea to the other charge, possession of a hallucinogenic drug.

Luellen formally entered his plea at a hearing on March 11, 2015; Oliver represented him at the hearing. He pled no contest, a plea in which he doesn't admit guilt but does admit that the State has enough evidence that he could be convicted. The district court advised Luellen about various rights he would be giving up by entering the plea (like the right to a jury trial) and asked Luellen a number of questions to determine whether he understood what he was doing. One question was whether the plea was being made in response to any promises or threats. Luellen replied, "No, sir, Your Honor." The court accepted Luellen's no-contest plea and also found Luellen guilty of the offense based on the State's summary of its evidence.

About 1 month later, on April 13, Luellen filed a motion on his own behalf asking to withdraw his plea. In the motion, he said that he had entered the plea under duress because he felt unsafe in jail after a jail employee, Deputy Jason Crumb, had kicked Luellen in the back while Luellen was lying on the floor of his cell. In a separate motion, Luellen also asked that a new attorney be appointed to represent him; the court granted

2

that motion, and Vernon Buck represented Luellen in the remaining hearings held in the district court.

That court heard evidence on Luellen's motion to withdraw his plea in July 2015. Four witnesses testified: Luellen, Oliver, Crumb, and Bobby Cutright, another sheriff's deputy who was working at the time Luellen said Crumb had kicked him.

Luellen testified that Crumb had kicked him in his cell on March 4, which was 1 week before the plea hearing. Because of the incident with Crumb, Luellen said that he had entered the plea under duress, wanting to leave the county jail because of unsafe, life-threatening conditions. Luellen did not dispute that he had later signed the plea agreement and that it said he was entering his plea freely and voluntarily, not as a result of force or any threats against him.

Oliver testified that she went over the terms of the plea agreement with Luellen on March 11 and that Luellen never mentioned the March 4 incident to her. She said she had been under the impression that Luellen wanted to leave the jail, but she said she had understood this was because he wanted to handle pending matters in another county. To make sure that her clients understand plea agreements, she said that her normal practice is either to read the agreement to her client or to have the client read it back to her. She said she went over the plea agreement with Luellen and that at no point did Luellen indicate that he lacked understanding of what he was doing or that he felt that he was being coerced.

Crumb testified that he had gone to Luellen's cell during the jail's head-count procedure on March 4. He had found that the window looking into the cell and the window from the cell to the outside were both covered with trash. Crumb said that he had asked Luellen to come to the window but Luellen had refused. Crumb said he finished the head count and then asked Cutright to come with him to Luellen's cell.

3

According to Crumb, when he entered Luellen's cell, he found that Luellen had been lying on his back under a bedsheet that was partly beneath a desk and partly beneath the bunk bed. Due to the layout of the cell, Crumb said he had to step over Luellen to get the trash out of the window that looks to the outside. Crumb denied that he had any physical contact with Luellen when he stepped over him and said that he had not threatened Luellen.

Cutright's testimony was consistent with Crumb's. Cutright said he had watched Crumb step over Luellen twice, going to and returning from the window. Cutright said the only contact he saw between the two was when Crumb dismantled Luellen's tent and placed the sheets on top of Luellen. Cutright said he didn't observe any other contact between Luellen and Crumb. Cutright said that he didn't recall any kind of animosity being expressed between Luellen and Crumb.

The district court denied Luellen's motion in an oral ruling. The court noted that Luellen had the burden to show good cause to withdraw the plea; the court also noted several factors it must consider under the applicable caselaw, including whether the defendant was represented by a competent attorney, whether the defendant had been misled or coerced, and whether the plea agreement was fairly made and entered into.

The court noted that Oliver had met with Luellen twice to review the charge against him and the discovery materials she had received (such as police reports). The court found that she did not give Luellen his own copy of the police reports but that she did go over them with him. The court also concluded that Luellen "understood . . . all the important provisions" of the plea agreement.

The court said that Luellen "argues that the reason he entered into the plea agreement was because he wanted to get out of the Lyon County Jail as soon as possible."

4

While the court did not reference Luellen's claim that Crumb had kicked him, the court clearly did not believe that allegation. The court had already noted that it must consider whether Luellen's plea had been coerced, but as to the claim that Luellen wanted out of jail because he was afraid for his well-being, the court simply concluded that Luellen's desire to get out of jail was the same as everyone else's there, and no one had suggested at the hearing that there was some common practice of kicking or hitting every prisoner: "Frankly, Mr. Luellen, there's not a person over at the jail that doesn't want to get out of there as soon as possible and that probably includes some of the jailers on some days." The court then concluded: "I do not believe you've come anywhere close to making a showing that there's a good cause to withdraw your plea in this case."

With that background, let's turn to the issue before us. A guilty plea may be withdrawn before sentencing upon a showing of good cause and within the discretion of the district court. K.S.A. 2015 Supp. 22-3210(d). On appeal, the defendant must establish that the trial court abused its discretion in denying the motion to withdraw the plea. *State v. Edgar*, 281 Kan. 30, 38, 127 P.3d 986 (2006); *State v. Ruiz*, 51 Kan. App. 2d 212, Syl. ¶ 1, 343 P.3d 544 (2015). A district court abuses its discretion if it makes an error of fact or law or if its discretionary judgment call is one that no reasonable person could agree with. *State v. Morrison*, 302 Kan. 804, 812, 359 P.3d 60 (2015); *Ruiz*, 51 Kan. App. 2d at 218.

In determining whether the defendant showed good cause, the district court must consider three factors, known as the *Edgar* factors: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *Edgar*, 281 Kan. at 36; *Ruiz*, 51 Kan. App. 2d 212, Syl. ¶ 2.

The district court noted and addressed each of the factors. It found that Oliver had met with Luellen to go over the charges, police reports, and related materials. It found

that Luellen understood all the key terms of the plea agreement. And while it never explicitly said it didn't believe Luellen's testimony about being in fear after being kicked by Crumb, it's clear that the district court did not accept that testimony. It equated Luellen's desire to get out of jail with that of any prisoner, not one who had been mistreated. And the court concluded by saying that Luellen had not "come anywhere close" to making a showing of good cause to withdraw his plea.

To the extent that the district court failed to make clear findings, we note that Luellen did not ask the court for additional factual findings. In the absence of a request by a party to the district judge for additional findings, we generally assume that the court made the findings necessary to support its ruling. *State v. Longoria*, 301 Kan. 489, 506, 343 P.3d 1128 (2015); *State v. Gaither*, 283 Kan. 671, 686, 156 P.3d 602 (2007). In addition, because the district court heard the testimony and had the chance to make credibility determinations, we must "accept as true the evidence and all inferences drawn from the evidence that tend to support the findings of the district judge." *Wilkins v. State*, 286 Kan. 971, 980-81, 190 P.3d 957 (2008). Under these standards, we conclude that the district court found that the facts did not support Luellen's motion under any of the *Edgar* factors, and the district court properly denied his motion.

Luellen does raise one additional issue on appeal, but he raises this issue only to preserve it for possible federal habeas review. As with all sentences under the Kansas sentencing guidelines for defendants who have previous convictions, Luellen's presumptive sentence was higher than it would have been if he had no prior convictions. Accordingly, Luellen claims that the court violated his constitutional rights when it used his prior convictions, in the form of his criminal-history score, to enhance his sentence. Luellen cites *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), which held that the Sixth Amendment to the United States Constitution requires that any fact that increases the penalty for a crime beyond the prescribed

statutory maximum—"[o]ther than the fact of a prior conviction"—must be submitted to a jury and proved beyond a reasonable doubt.

But Luellen concedes that the Kansas Supreme Court has already considered this issue and confirmed that *Apprendi* does not keep the court from considering the mere fact of a prior conviction when applying the Kansas sentencing guidelines. Accordingly, a defendant's criminal-history score doesn't have to be proved to a jury beyond a reasonable doubt before it can be used to increase a defendant's sentence. See, *e.g.*, *State v. Fisher*, 304 Kan. 242, 264, 373 P.3d 781 (2016); *State v. Ivory*, 273 Kan. 44, 46, 41 P.3d 781 (2002).

We affirm the district court's judgment.